NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

| | |
|---|---|
| Timothy J. MILLER, | |
| Plaintiff, | Civil No. 08-3092 (AET) |
| v. | **OPINION & ORDER** |
| Ryan WOODHEAD, Peter GREHAN, Tara STEFANO, Jason ASTBURY, Brian SUSCHKE, and Nelson CARTAGENA, | |
| Defendants. | |

THOMPSON, U.S.D.J.

I. INTRODUCTION

This matter has come before the Court upon Defendants Brian Suschke, Ryan Woodhead, Jason Astbury, Nelson Cartagena, Peter Grehan and Tara Stefano's respective Motions for Summary Judgment [docket # 45, 46, 47, 48, 50]. The Court has decided the motions upon the submissions of the parties and without oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Defendants Suschke, Woodhead, Astbury, and Stefano's motions are denied, and Defendants Cartagena and Grehan's motions are granted.

II. BACKGROUND

This case arises out of Plaintiff's arrest, which Plaintiff alleges was effectuated using excessive force; the Defendants are six police officers employed by the Trenton Police Department. On the night of June 23, 2006, the Trenton Police were informed that a black male wearing a black shirt and blue jeans was carrying a weapon at the Jet Wine & Liquors in Trenton. (John Morelli, Esq., Certification Ex. G, Affidavit of Probable Cause 1) [45-10]. Upon entering

-1-

the bar, Defendant Jason Astbury saw that the Plaintiff matched the caller's description and thus approached Plaintiff from the front of the bar. (*Id.*) Because Plaintiff appeared to be reaching for his waistband, Astbury grabbed Plaintiff's shoulder. (*Id.* at 1–2.) Plaintiff pulled away from Astbury and ran to the rear of the bar and collided with Defendant Ryan Woodhead, who shoved him backwards. (*Id.* at 2.) Plaintiff then turned and ran back toward the front of the bar. (*Id.*) Astbury grabbed Plaintiff by the back of his shirt and, with the help of Defendant Suschke, brought him to the ground. (*Id.*) The facts thereafter are in dispute. Plaintiff alleges in his Complaint,

> During the take down, I was aware that Jason Asterbury [sic] . . . punched me numerous times in the face and head. Tara Stefano . . . kicked me several times in my stomach and legs. The remaining officers all began to kick and beat me about the face and body so much that I lost count of the number of officers throwing the kicks and punches. At one point the bottom of a boot was pressed up against the side of my face and neck. The officers named above along with their fellow officers continued the beating and then they maced me several times in the eyes and mouth before they cuffed and dragged me out of the bar.

(Compl. 10) [1]. Although Plaintiff's Complaint states that force was used on him prior to his being handcuffed, Plaintiff later testified at his deposition that he was punched, kicked, and maced *after* he was handcuffed. (Morelli Certification Ex. A, Miller Dep. 114:15–16; 115:23–24) [45-4]. As a result of the alleged use of force, Plaintiff sustained a cut on his face that required ten stitches. (*Id.* at 145:11–12.) Plaintiff's medical records from that night indicate that he suffered a "head injury," a "contusion (deep bruise) around the face or scalp," and a "subconjunctival hemorrhage, [i.e.] a harmless collection of blood under the lining of the eye." (Morelli Certification Ex. F, Capital Health System–Helene Fuld Campus Aftercare Instructions) [45-9]. Defendant Suschke asserts that Plaintiff could have struck his face during the take-down on a bar stool or a step beneath the bar. (Suschke Br. in Supp. 7) [45].

      Plaintiff filed the Complaint [1] on June 23, 2008, alleging two claims under 42 U.S.C. § 1983: (1) that the officers used excessive force in violation of the Fourth Amendment; and (2) that

they were deliberately indifferent to his serious medical needs in violation of the Fourteenth Amendment Due Process Clause. On April 6, 2009, we granted partial summary judgment for the Defendants with respect to the deliberate indifference claim. (*See* Mem. & Order, April 6, 2009, at 5) [8]. The Defendants now move for summary judgment as to the excessive force claim [45, 46, 47, 48, 50].

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment should be granted, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002) (internal quotations omitted). In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986). Specifically, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248–49.

### B. Weight Accorded to Video Footage

The Defendants argue that the Court must view the facts not in the light most favorable to the Plaintiff as the nonmoving party, but instead in the light depicted by the video footage submitted to the Court, (*see* Morelli Certification Ex. D.) The Defendants support this

proposition with the Supreme Court's pronouncement in *Scott v. Harris*: "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 550 U.S. 372, 380–81 (2007). Instead, where a nonmovant's "version of events is so utterly discredited by the record that no reasonable jury could [] believe[] him," a court should "view[] the facts in the light depicted by the videotape." *Id.* at 380–81. *Scott* involved a high-speed chase in which the respondent's factual assertions—that he had remained in control and had not endangered motorists and pedestrians—were directly contradicted by a video depicting his car racing down a narrow road, swerving, and nearly hitting other cars. *Id.* at 379–80. Accordingly, the Court adopted the videotape's version of the facts.

Here, after having viewed video footage captured by three security cameras at the bar on the night in question, there are at least three reasons why we cannot conclude that the footage so clearly contradicts Plaintiff's story that no reasonable jury could believe him. First, the video in question is not a steady stream of footage; instead, what we have is a recording that jumps from still-frame to still-frame, making it difficult to discern whether the police officers' arm and leg movements signify that the officers are merely securing the Plaintiff as opposed to punching and kicking him. Second, because in the video footage the Plaintiff is surrounded by as many as six officers, it is difficult to see the Plaintiff and what is being done to him. Third, the video does not enable us to determine the point at which Plaintiff was handcuffed—a fact that is in dispute and also important to determining whether the Defendants' use of force was excessive.

Thus, we will observe the traditional standard for summary judgment motions and construe the facts in the light most favorable to the Plaintiff.

### C. Qualified Immunity

Defendants Suschke, Woodhead, Astbury, and Stefano argue that they are entitled to qualified immunity because any force used was reasonable under the circumstances. (Suschke Br. in Supp. 17–19) [45]; (Woodhead Br. in Supp. 6) [46]; (Astbury Br. in Supp. 14) [14]; (Stefano Br. in Supp. 12–15) [50].

Qualified immunity is a defense that "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ray v. Twp. of Warren*, 626 F.3d 170, 173 (3d Cir. 2010) (quoting *Pearson v. Callahan*, --- U.S. ---, 129 S. Ct. 808, 815 (2009)). The Supreme Court has established a two-part analysis[1] for addressing a qualified immunity defense. *Pearson*, 129 S. Ct. at 816. First, a court must determine "whether the plaintiff has alleged a deprivation of a constitutional right at all." *Id.* The Third Circuit has described this prong as an inquiry into "whether there is even a wrong to be addressed in an analysis of immunity." *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007). Second, a court must decide whether the right at issue was "clearly established at the time of defendant's alleged misconduct." *Pearson*, 129 S. Ct. at 816. Under this prong, a court examines "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Curley*, 499 F.3d at 207. Qualified immunity shields from liability those officers who mistakenly, but reasonably, believed their actions were lawful. *Id.* Whether an officer made a reasonable mistake of law warranting qualified immunity is a question of law for the court, and should not be submitted to a jury. *Id.* at 211. However, "[a] judge may use special interrogatories, for instance, to permit the jury to resolve the disputed facts upon which the court can determine, as a matter of law, the ultimate question of qualified immunity." *Id.* at 211 n.12.

---

[1] A court may exercise its "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S. Ct. at 818.

### 1. Deprivation of a Constitutional Right: Excessive Force

The Court begins by considering whether a reasonable fact-finder could conclude that the Defendants deprived Plaintiff of a constitutional right.  Plaintiff has alleged that the Defendants used excessive force against him.  (*See* Compl. 4–9) [1].  A police officer who uses excessive force in the course of his or her duties violates the Fourth Amendment's prohibition of unreasonable searches and seizures.  *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006).  In determining whether the amount of force used is excessive, the relevant inquiry is whether the officers' actions were "objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989) (quotation marks omitted).  Courts engaging in this analysis must be sensitive to the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  *Id.* at 396.  In analyzing the conduct alleged, the Court looks at several factors, including

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

*Couden*, 446 F.3d at 496–97 (citations omitted).

Here, the crime was possession of a firearm, and we readily recognize the safety threat Plaintiff's firearm posed, as well as the fact that Plaintiff attempted to evade arrest when initially approached by Defendant Astbury.  However, Plaintiff asserts in his deposition testimony that the Defendants' actions occurred *after* he was handcuffed and was no longer resisting arrest.  (*See* Morelli Certification Ex. A, Miller Dep. 114:15-16; 115: 23-24) [45-4].  A reasonable fact-finder could conclude that if the Plaintiff was handcuffed he no longer posed a threat of harm or risk of

flight. *See Couden*, 446 F.3d at 497 (finding excessive force as matter of law where plaintiff was not "resisting arrest or attempting to flee" when force was used). Accordingly, material issues of fact exist as to whether the Defendants used excessive force and therefore violated Plaintiff's Fourth Amendment rights.

### 2. Clearly Established Right

When Plaintiff was arrested in 2008, it was well established that punching, kicking, and pepper-spraying an individual who is handcuffed and not resisting would constitute excessive force. *See, e.g.*, *Peschko v. City of Camden*, 2006 WL 1798001, at *4–5 (D.N.J. June 28, 2006) (holding that a reasonable jury could find excessive force where plaintiff was punched and pepper-sprayed after he was handcuffed); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004) (finding it clearly established that pepper-spraying plaintiff after he was handcuffed constituted excessive force); *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (finding excessive force where plaintiff was already handcuffed when officer slammed her head on the car); *Sanford v. Motts*, 258 F.3d 1117 (9th Cir. 2001) (finding that plaintiff who was punched in the face after she was handcuffed would have strong excessive force claim). Adopting Plaintiff's version of the facts on the present motion for summary judgment, we find that it would have been clear to a reasonable officer that it was unlawful to beat and mace a suspect who is handcuffed and no longer poses a threat. Accordingly, the Court must deny the motion for summary judgment based on qualified immunity.

Because Defendant Stefano's only argument in support of summary judgment is that qualified immunity applies, we hereby deny her motion. Suschke, Woodhead, and Astbury make additional arguments, which we consider below.

### D. Plaintiff's Inability to Identify Which Defendants Used Excessive Force

Defendants Suschke, Woodhead, and Astbury all make essentially the same argument regarding the insufficiency of Plaintiff's allegations—that Plaintiff cannot specifically identify any one of them as the officer who did the punching, kicking, or macing. (Suschke Br. in Supp. 3, 15) [45-1]; (Suschke SMF ¶ 10 (citing Miller Dep. 252:17, 254:12)) [45-2]; (Woodhead Br. in Supp. 8) [46-1]; (Woodhead SMF ¶ 48 (citing Miller Dep. 189:10–24)) [46-3]; (Astbury Br. in Supp. 7 (citing Miller Dep. 237:19–239:13)) [47-6].

A plaintiff can sustain an excessive force claim under § 1983 against an officer who did not participate directly in the use of force if that officer failed to intervene despite a reasonable opportunity to do so. *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002) (citing *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986) and *Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981)). Accordingly, where all of the named officers were in the vicinity, a plaintiff's uncertainty as to which officers used excessive force does not negate the officers' potential liability as a matter of law. *See id*. This principle appears well-settled in this district. *See, e.g. Hudgon v. LaFleur*, No. 07-3626, 2010 WL 2950004, at *5 (D.N.J. July 22, 2010) ("[P]laintiff's testimony makes clear that he believes that multiple officers struck him with fist or foot while he was face-down on the ground. His inability to identify the officers involved by name does not necessarily mean he cannot prove liability circumstantially."); *Abrahante v. Johnson*, No. 07-5701, 2009 WL 2152249, at *9 (D.N.J. July 14, 2009) ("Although Plaintiff does not know which officer allegedly struck him, a jury could reasonably find that an officer employed excessive force even if Plaintiff—as he lay face-down and handcuffed on the ground with 10 or 12 officers present—could not identify the officer."); *D'Arrigo v. Gloucester City*, No. 04-5967, 2007 WL 1755970, at *12 (D.N.J. June 19, 2007) (stating that "even if Plaintiff is ultimately able to show that both

officers were present but only one used excessive force, liability could attach to both because clearly, on Plaintiff's version of facts, each officer had a reasonable opportunity to intervene").

Here, Plaintiff was face-down when the beating took place and has acknowledged in his deposition testimony that he does not know which Defendants were responsible for punching, kicking, and macing him. (*See, e.g.*, Miller Dep. 134:1-6) [45-4]. However, other record evidence indicates that Suschke, Woodhead, and Astbury participated in or were present during the alleged beating. In a sworn Affidavit of Probable Cause, Astbury states: "I began to punch Miller about the body" and "I administered a quick one-second burst of my department issued Def-Tek MK3 pepper-spray to Miller's nose and mouth area." (Morelli Certification Ex. G, at 2) [45-10]. The affidavit also notes that "Det[.] Suschke placed his knee in [sic] the back of Miller[']s neck to maintain his body." (*Id.*) The affidavit further describes Woodhead's role in the scuffle: "Det[.] Woodhead immediately yelled gun, and reached for same . . . . Det[.] Woodhead was finally able to remove the weapon from Miller's hold." (*Id.*) This sworn affidavit is reliable evidence that these three officers participated in the arrest and had physical contact with the Plaintiff. Whether that contact was excessive and in violation of the Fourth Amendment is a factual question not appropriate for resolution on summary judgment.

Thus, we will deny summary judgment as to Defendants Suschke, Woodhead, and Astbury.

### E. The Absence of Defendants Cartagena and Grehan When Force Was Used

#### 1. Defendant Cartagena

Defendant Cartagena asserts that he was not in the bar when Plaintiff was apprehended, and thus could not have been responsible for any of the excessive force allegedly used on Plaintiff. (Cartagena Br. in Supp. 3) [48]; (*see* Miller Dep. 247:1-24). Plaintiff's deposition testimony confirms that Plaintiff had no physical contact with Cartagena "[i]nside the bar."

(Miller Dep. 247:13.)  Plaintiff instead admitted, "My only problem with [Cartagena] is that he was the transporting officer and he had me out on the car, on the hot car, and he didn't take me to the hospital when I was bleeding profusely from the face." (*Id.* at 247:13-17.)  This conduct would fall under Plaintiff's deliberate indifference claim, which we eliminated in our Order granting partial summary judgment.  (*See* Mem. & Order, April 6, 2009, at 4) [8].  Because, as Plaintiff has acknowledged, Cartagena's conduct is unrelated to Plaintiff's excessive force claim, we will grant summary judgment as to this Defendant.

### 2. Defendant Grehan

Defendant Grehan asserts that he never came into any physical contact with the Plaintiff, nor was he even present inside the bar.  (Stefano & Grehan Br. in Supp. 5–8); (*id.* Ex. B) [50].  Grehan supports this assertion with several pieces of evidence.  First, Prisoner Property Receipts from the night in question indicate that Grehan was the officer who transported Terron Bazemore—another individual in possession of a gun at Jet Bar on the night in question—and that Grehan was neither the arresting officer nor the transporting officer of Plaintiff.  (Stefano & Grehan Br. in Supp. Ex. D) [50-5].  Second, Astbury's affidavit does not mention Grehan as one of the officers participating in the arrest.  (Morelli Certification Ex. G, at 2) [45-10].  Third, Grehan's answers to Plaintiff's interrogatories state that Grehan "remained outside and did not witness any activity involving the plaintiff inside Jet Wine and Liquors Bar." (Stefano & Grehan Br. in Supp. Ex. B, at ¶ 5, 6, 7, 8, 10, 14, 16) [50-3].  Fourth, Plaintiff appears to admit during his deposition that he does not know whether he came into physical contact with Grehan.  (Miller Dep. 223:5–7.)  Rather, Plaintiff merely suggests that Grehan may know who was responsible for the alleged excessive force.  (*Id.* 224:2–4 ("[I]f [Grehan] didn't do anything, then he didn't do anything, but I'm pretty sure he knows who did.").)[2]  In light of the evidence, there is no genuine

---

[2]  Grehan also argues that the video surveillance footage confirms that he was not present in the bar during the

issue of material fact as to whether Grehan used excessive force on Plaintiff or otherwise failed to intervene despite a reasonable opportunity to do so.  Thus, we will grant summary judgment as to Defendant Grehan.

---

alleged beating.  (Stefan & Grehan Br. in Supp. 7); (*see* Morelli Certification Ex. D).  However, for the reasons stated above, we consider the video footage to be equivocal.  *See supra* III.B.

IV. CONCLUSION

For the reasons stated above, and for good cause shown,

IT IS on this 2nd day of March, 2011,

ORDERED that Defendant Brian Suschke's Motion for Summary Judgment [docket #45] is DENIED; and it is

ORDERED that Defendant Ryan Woodhead's Motion for Summary Judgment [46] is DENIED; and it is

ORDERED that Defendant Jason Astbury's Motion for Summary Judgment [47] is DENIED; and it is

ORDERED that Defendant Nelson Cartagena's Motion for Summary Judgment [48] is GRANTED; and it is

ORDERED that Defendant Tara Stefano's Motion for Summary Judgment [50] is DENIED; and it is

ORDERED that Defendant Peter Grehan's Motion for Summary Judgment [50] is GRANTED; and it is

ORDERED that Nelson Cartagena and Peter Grehan are hereby removed as Defendants in this action.

                                                                         */s/ Anne E. Thompson*
                                                                         ANNE E. THOMPSON, U.S.D.J.